### AGNES QUIMBY *vs.* ALICE B. LOWELL.

Cumberland.    Opinion February 16, 1897.

*Sale.    Assumpsit.    Warranty.    Waiver.*

By a written contract between the parties the defendant made a conditional sale of a bicycle to the plaintiff, whereby she reserved the title until the property was fully paid for. The plaintiff, on the other hand claimed that her signature to the contract was fraudulently obtained, and that the sale was in fact made by parol on credit, prior to the written contract, and that the property had passed to her absolutely. The plaintiff, however, failed to make the payments when they matured, and the defendant resumed possession of the bicycle. Thereupon, the plaintiff brought an action of assumpsit to recover the money paid on account of the purchase. *Held;* that the defendant had a right to take possession of the property, if the written contract governs; but otherwise, if the property had passed to the plaintiff, and the taking would be a tort; and that an action of assumpsit cannot be maintained upon either theory.

*Also;* there being no evidence that the defendant had sold the wheel and converted it into money, the plaintiff cannot waive the tort and maintain assumpsit.

It is only when a chattel wrongfully taken has been converted into money, or its equivalent, by the wrong-doer, that the other party can waive the tort and maintain assumpsit for the money actually received.

A vendor impliedly warrants the title of an article in his possession at the time of sale. *Held;* in this case, that the defendant had a good title to the bicycle when the sale was made to the plaintiff,— it appearing that the defendant's vendor had waived whatever claims he had to the property.

ON MOTION BY DEFENDANT.

This was an action of assumpsit for money had and received. The case was tried to a jury in the Superior Court, for Cumberland County, and a verdict of thirty-nine dollars was rendered for the plaintiff.

The case appears in the opinion.

*R. T. Whitehouse*, for plaintiff.

Counsel argued :

1. The entire contract was rendered voidable by fraud and the plaintiff having elected to avoid is entitled to recover. The real oral contract was a sale outright. The written lease was fraudulently substituted for the real contract of sale. The avoidance of

the written contract by fraud avoids all the contractual relations between the parties and entitles the plaintiff to recover.

2.   If we regard the oral agreement as still existing after the avoidance of the written contract by fraud, nevertheless the plaintiff is still entitled to recover on the ground of failure of consideration for want of title.   If the defendant acted fraudulently, knowing her want of title and concealing it, then the oral agreement itself was voidable.   If the defendant acted innocently not knowing her want of title, nevertheless the act of selling impliedly warranted the title.   A breach of implied warranty of title may be taken advantage of in two ways, first, by an action of assumpsit to recover the purchase price ; second, by an action for damages on the warranty.   The plaintiff chose the former.   A warranty of title is broken by any prior incumbrance.   The breach of an implied warranty of title occurs at the time of the sale if title is defective, whether the vendee is disturbed in his possession or not.

3.   Under the oral agreement, aside from the question of title, the plaintiff would be entitled to recover for the conversion of the wheel by the defendant.

Counsel cited :   Benj. on Sales, 6th Ed. pp. 371, 376, 379, 591, 631, 632, 893 ; *Thurston* v. *Spratt*, 52 Maine, 202 ; *Maxfield* v. *Jones*, 76 Maine, 137 ; *Shattuck* v. *Green*, 104 Mass. 42 ; *Grose* v. *Hennessey*, 13 Allen, 389 ; *Perkins* v. *Whelan*, 116 Mass ; 542 ; *Richardson* v. *Kimball*, 28 Maine, 463 ; *Enfield* v. *Buswell*, 62 Maine, 128.

*George Libby*, for defendant.

Sitting:   Walton,   Emery,   Haskell,   Whitehouse,   Wiswell,   Strout,   JJ.

Strout, J.   Defendant, in possession of a bicycle, which she represented as her property, sold it to the plaintiff on May 2, 1895, as plaintiff claims, by absolute sale, part of the price being paid at the time, the balance being on credit; or, as claimed by defendant, by a conditional sale, evidenced by a written contract signed by

plaintiff, under which the title to the property was to remain in the seller till full payment made. Plaintiff claimed that she did not read or know the contents of the paper she signed, and that it was fraudulently obtained from her. The contrary was claimed by the defendant. There was evidence introduced by both parties tending to sustain their several contentions. The purchase price was sixty dollars; but to be fifty-five dollars if that amount was paid within three months, as plaintiff's witnesses say, or within sixty days as stated in the written contract. Plaintiff paid in all thirty-nine dollars, and neglected or refused to pay any more, because, as she says, she had heard that defendant did not have title to the wheel, nor the right to sell it. Thereupon, about September 13 or 14, 1895, defendant took the wheel from plaintiff, against her objection, and retained it thereafter. The jury returned a verdict for plaintiff for thirty-nine dollars, the full amount paid by plaintiff; and the case is here upon motion by defendant to set the verdict aside as against law and evidence.

If the written contract controls, the defendant had the right to take the wheel, the plaintiff having failed to make payment according to its terms; and the plaintiff would have no cause of action. If the written contract is set aside, on the ground of fraud, as plaintiff claims it should be, and under the parol contract of sale testified to by plaintiff, it was a sale partly upon credit, the title to the wheel passing to plaintiff upon delivery, the defendant committed a trespass in taking the wheel from plaintiff; but her remedy would be in tort and not by an action for money had and received, as this action is. There is no evidence that defendant has sold the wheel taken from plaintiff and converted it into money. The plaintiff, therefore, cannot waive the tort and bring assumpsit. It is only when the chattel wrongfully taken has been converted into money, or its equivalent, by the wrong-doer, that the other party can waive the tort and maintain assumpsit for the money actually received. *Water Power Co.* v. *Metcalf*, 65 Maine, 41; *Railroad* v. *Mayo*, 67 Maine, 470.

But, it is said that at the time of sale, the defendant, though in possession of the wheel, had not legal title thereto, nor authority

to sell it; that there was an implied warranty of title upon which an action could be brought; or, after defendant had deprived plaintiff of the possession of the wheel, and received and retained it herself, the plaintiff can recover back the money paid. This result would follow, if the premises were established.

It appears that Albert H. Lowell, the defendant's husband, on July 2, 1894, bought of H. W. McCausland two bicycles, one of which is the one in controversy, and gave his note therefor for one hundred and eighty-five dollars with interest, payable in a second hand bicycle at twenty-five dollars, and in painting a house and stable at one hundred and fifteen dollars, and the balance of forty-five dollars in the first week in January, 1895 ; and gave McCausland an agreement, in writing, duly recorded, that the bicycles should remain the property of McCausland till the note was fully paid. September 18, 1894, Albert H. Lowell sold the bicycle in controversy to his wife, the defendant in this suit, and gave her a bill of sale of it. Albert Lowell paid to McCausland the second hand bicycle and did the painting, called for by the note, apparently before the sale by him to his wife, leaving due upon the note about forty-five dollars, which was finally paid about February, 1896. Mr. Lowell testifies that he asked McCausland for authority to sell this wheel to his wife, and that although McCausland did not want to change the note and agreement he then held, duly recorded, he told him that "if I [Lowell] wanted to sell her a bicycle it was all right to sell it to her." If this permission was given by McCausland to Mr. Lowell it authorized a sale to the defendant and McCausland would be estopped to claim the wheel, and the defendant, when she bought of her husband, obtained a perfect title to it. McCausland testifies, when asked if he ever gave permission to Mr. Lowell to sell this wheel, that "he can't say that he did ; " and again says that he did not give permission. On cross-examination he says that, at the time of the sale to defendant, there was about forty dollars due on Mr. Lowell's note; that " Mr. Lowell wanted to fix it in some way so as to release his wife's wheel," but nothing of the kind was arrived at; that he can't say what he told Mr. Lowell, but no change was made in the

note.  To the question whether he told Mr. Lowell that he didn't want to change the note, " but would give him verbal permission to dispose of the ladies' wheel," he says : " I wouldn't want to say I did " ; and to the question if he would want to say he didn't, he says ; " I should have to say I didn't.  If I had given my consent I should have fixed the matter up."  Then he says : " The way I looked at it, the note was all right as it was and all recorded and I wanted to let it stay as it was until it was settled.  There was only a little due, and I really thought in my own mind that if Mr. Lowell was anxious for her to have the wheel, when he settled he could let her have it, and so the thing stopped there as far as any transaction was concerned."  Later Mr. Lowell told him he had sold the wheel.  McCausland made no objection.  After plaintiff bought the wheel, she sent it to McCausland to be repaired.  He repaired it and sent it back to plaintiff, making no suggestion of his claim upon it.  He says he never made any claim on anybody for the wheel.  While he did not wish to change the original recorded note and agreement, he was evidently content to rely upon the security of the remaining wheel, for the small balance due, and had no objection to the sale of one.  It is not pretended that he affirmatively objected to the sale.  When Mr. Lowell asked permission, there was no assertion that he should claim both wheels till he was paid, as there naturally would have been if he really objected to the sale of one.  When informed by Mr. Lowell that he had sold one wheel, he made no complaint or protest.

This conduct of McCausland when he knew Mr. Lowell proposed to sell, and after he had sold the wheel, overcomes his argumentative denial of authority, and really gives force and effect to the positive testimony of Mr. Lowell, that McCausland told him that he might sell the wheel.  It would estop him from claiming property in it against the plaintiff.  The decided preponderance of evidence establishes the proposition that Mr. Lowell had authority from McCausland to sell the wheel to his wife, or that the sale was ratified by him.  She, therefore, obtained perfect title thereto from her husband, and of course could convey good title to plaintiff.

No question of rescission is involved. Defendant took the wheel for non-payment, and not to rescind. She had no right of rescission and made no claim to exercise such right if it existed. To rescind, she must have returned what she had received. The plaintiff made no claim to rescind,—never offered to return the wheel,—even objected to defendant taking possession of it. She made no objection to defendant on account of title, but complained only of the quality of the wheel.

The verdict is so clearly wrong, that we feel that the jury must have misapprehended the force and effect of the evidence. It should not be allowed to stand.

*Motion sustained.*